IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID W. TEAGUE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-15-151-FHS-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant David W. Teague requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on February 13, 1965, and was forty-eight years old at the time of the administrative hearing (Tr. 30, 161). He has a ninth grade education and past relevant work as a grounds keeper, janitor, and plumber/laborer (Tr. 22, 179). The claimant alleges inability to work since March 10, 2011 because of his back, a knee injury, and bipolar disorder (Tr. 178).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on September 19, 2011. His applications were denied. Following an administrative hearing, ALJ James Bentley found that the claimant was not disabled in a written opinion dated September 13, 2013 (Tr. 9-24). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1581.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, that he could lift and carry up to twenty pounds occasionally and ten frequently, sit for up to six hours and stand or walk for up to six

hours in an eight-hour workday, but that he required a sit/stand option defined as a temporary change in position from sitting to standing and vice versa with no more than one change in position every thirty minutes and without leaving the workstation. Additionally, he found that, due to psychologically-based factors, the claimant could perform simple tasks with routine supervision, have occasional contact with supervisors and co-workers, and no work-related contact with the public. The ALJ further noted that that if the claimant could perform light work, he could also perform sedentary work (Tr. 15). The ALJ concluded that even though the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, motel/housekeeper, small products assembler, and conveyor line bakery worker (Tr. 22-23).

## Review

The claimant contends that the ALJ erred by: (i) failing to fully and fairly develop the record, (ii) failing to properly evaluate his RFC with regard to his ability to walk six hours total in an eight-hour workday, (iii) failing to properly evaluate the consultative examination of Dr. Diane Brandmiller, and (iv) failing to properly account for a Third Party Function Report submitted by his brother. None of these contentions are ultimately persuasive, and the decision of the Commissioner should therefore be affirmed.

The ALJ found the claimant had the severe impairments of history of right knee arthroscopy, mild changes of the lumbar spine, dysthymic disorder, and subjective history of bipolar disorder (Tr. 11). The medical evidence in the record reflects that in 2009 the claimant underwent physical therapy for neck strain and bilateral shoulder pain following

a motor vehicle accident (Tr. 281). On April 7, 2009, he had reached maximum medical improvement, could return to work without any restrictions, and was not expected to have long-term sequelae or any impairment rating (Tr. 281). The final impression was: neck strain and bilateral shoulder pain, resolved; lumbar back strain and degenerative disk disease; and right knee meniscal tear, resolved (Tr. 281).

On November 22, 2011, Dr. Diane Brandmiller, Ph.D., conducted a mental status examination of the claimant. At that examination, Dr. Brandmiller noted that the claimant walked slowly with a cane (Tr. 295-296). Upon examination, she assessed him with dysthymic disorder, and rule out borderline intellectual functioning, along with a global assessment of functioning score of 51-60 (Tr. 297). Under "Work-Related Mental Ability and Recommendations," she stated that he did not described symptoms consistent with bipolar disorder, and the claimant's immediate memory appeared impaired, but short-term memory was intact; that concentration was mildly impaired and performance on the reverse counting task improved with simple as opposed to complex tasks; abstract thinking was impaired; expressive language skills were impaired by poor articulation, vagueness, and delays while speaking; and receptive language skills appeared impaired by slow information processing. She stated that he appeared capable of understanding and carrying out simple instructions, but may need additional time to understand and carry out tasks, but that he would likely have difficulty with complex or multi-step directions, and that he would need assistance managing any funds because his brother was handling his finances at that time (Tr. 297).

One month later, on December 13, 2011, Dr. Wojciech L. Dulowski conducted a physical examination of the claimant (Tr. 299). At that examination, Dr. Dulowski noted that the claimant walked slowly but had good safety and stability, along with slight tenderness in the lumbar spine, and slight tenderness of the mid aspect of the right knee with plus minus positive Lachman sign and negative valgus/varus test (Tr. 299). He assessed the claimant with bipolar disorder, history of injury to right knee operated in 2010, history of back pain but neurologically intact (Tr. 300).

An undated, unsigned assessment by a state reviewing physician reflected that the claimant was moderately limited in the three areas of functional limitation, and that, as part of a mental RFC assessment, he was markedly limited in the ability to understand and remember detailed instructions and carry out detailed instructions (Tr. 315-319). This assessment stated that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, cannot relate to the general public, and can adapt to a work situation (Tr. 321). Lee Reback, Psy.D., then reviewed the claimant's records and also concluded that the claimant had moderate limitations in the three areas of functional limitation (Tr. 351). Dr. Reback then completed a mental RFC assessment indicating that the claimant was moderately limited in five areas: ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and interact with the general public (Tr. 356).

Two state reviewing physicians also determined that the claimant could perform medium work (Tr. 325-339).

In his written opinion, the ALJ thoroughly discussed the claimant's hearing testimony, as well as all the evidence in the record. Specifically, he noted Dr. Brandmiller's assessment, and afforded it "great weight . . . as a whole," but did not find the claimant may need additional time to understand and carry out tasks, or help managing finances, as both the claimant and his brother had elsewhere noted he was able to manage finances but might need reminding to pay the bills (Tr. 19). He noted that the claimant worked in 2010 as a plumber's helper and was able to perform that job until the company closed (Tr. 19). He gave great weight to the state physician opinions that the claimant could perform medium work, but modified the claimant's RFC to light work with a sit/stand option based on the claimant's subjective complaints. Furthermore, he gave great weight to the mental RFC assessments, that the claimant could perform simple and routine work activities, but modified the mental RFC to include only occasional contact with supervisors and co-workers and no work-related contact with the public, on the basis of the claimant's subjective complaints (Tr. 19).

The claimant first contends that the ALJ erred by failing to develop the record because: (i) the record did not contain an x-ray of the claimant's back or knee, and (ii) Dr. Dulowski's opinion did not contain a statement of the claimant's ability to perform work-related activities. "The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised . . . The duty is one of inquiry, ensuring that the ALJ is informed about

'facts relevant to his decision and [learns] the claimant's own version of those facts.'" *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993), *quoting Dixon v. Heckler,* 811 F.2d 506, 510 (10th Cir.1987) [citations omitted]. The undersigned Magistrate Judge is satisfied that the ALJ adequately performed his duty here. Furthermore, although regulations *do* provide that a consultative examination report should contain an opinion as to the claimant's ability to perform certain work-related activities despite his or her impairments, "the absence of such a statement in a consultative examination report will not make the report incomplete." 20 C.F.R. § 416.919n(c)(6).

Second, the claimant asserts that the evidence does not support a finding that he can walk for six hours total during an eight-hour workday because both Dr. Brandmiller and Dr. Dulowski noted that he walked slowly. Contrary to claimant's arguments, however, the ALJ discussed all the evidence in the record and his reasons for reaching the RFC. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The gist of the claimant's appeal is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). *See also Corber v.*

*Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 404.1545, 416.946. Despite claimant's argument to the contrary, the evidence does not reflect a limitation of time for how long the claimant can walk; simply that he does not move quickly. He points to no evidence other than his own assertion that he cannot walk six hours in an eight-hour workday. *See Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

Third, the claimant asserts that the ALJ erred in disagreeing with Dr. Brandmiller's statement that the claimant would need additional time to understand and carry out tasks. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to

which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

The ALJ's treatment of Dr. Brandmiller's opinion meets these standards. He largely credited her opinion and gave reasons for the portion of her opinion that he did not adopt, as described above. The ALJ's opinion was sufficiently clear for the Court to determine the weight he gave to her opinions, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."), *citing* 20 C.F.R. § 404.1527(d)(2).

Finally, the claimant argues that the ALJ ignored the Third Party Function Report submitted by the claimant's brother. Social Security Ruling 06-03p provides the standards for evaluation of third party evidence such as that provided by the claimant's brother. Other source evidence, such as functional reports or testimony from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) the nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). Here, the ALJ noted this requirement at the outset of step four, and the entirety of the opinion reflects that he

considered it, because he referenced it multiple times in both steps three and four (Tr. 13-22). Although it may be preferable for the ALJ to specifically note the Report and his findings thereby related, he was not required to make written findings as to each lay witness where, as here, the ALJ's opinion as a whole reflects that he did consider it. *See Best-Willie v. Colvin*, 514 Fed. Appx. 728, 736 (10th Cir. 2013) ("[A]lthough the ALJ's decision does not expressly address this lay witness evidence, any error in failing to do so is harmless because the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.") (quotation omitted). *See also Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) ("In actuality, the ALJ is not required to make specific written findings of credibility only if the written decision reflects that the ALJ considered the testimony.") (quotation omitted).

The ALJ specifically noted every medical record available in this case, *and still concluded* that he could work. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir.2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**